Dartmouth Savings Bank v. Estate of Max Schoen by Palmer
D. Ainsworth, Administrator d.b.n., c.t.a. and Douglas
Bruce Andrews, Edward Elliot Andrews and Robert
Keith Andrews by Palmer D. Ainsworth, Guardian

[276 A.2d 637]

No. 104-70

Present: Holden, C.J., Barney, Smith and Keyser, JJ., and Hill, Supr. J.

Opinion Filed April 6, 1971

*Black & Plante*, White River Junction, for Plaintiff.

*Parker, Ainsworth & Richards*, Springfield, for Defendants.

**Keyser, J.** The plaintiff, a banking institution in Hanover, New Hampshire, brought its petition in Orange County Court of Chancery to foreclose three mortgages executed in its favor by Lillian S. Andrews, Executrix of the Estate of Max Schoen, late of Thetford, deceased. The property mortgaged was the homestead of said Schoen in Thetford. Max Schoen died testate. By the terms of his will the right to use and occupy the residence was devised to his wife, with a similar devise over to Lillian S. Andrews, his daughter. Upon the termination of each life tenancy all of the real estate was devised to Schoen's surviving grandchildren in equal shares. Max Schoen survived his wife and died leaving his daughter, Lillian, and three grandchildren, Douglas Bruce Andrews, Edward Elliot Andrews and Robert Keith Andrews surviving him. Mrs. Andrews was appointed executrix of the Schoen estate by the Probate Court for the District of Bradford.

On June 27, 1966, the executrix filed an application with the probate court for a license to mortgage all of the real estate of the deceased in Thetford. The petition alleged only that such mortgage would be beneficial to the estate and those interested in the estate. Consent to, and approval of, the granting of the license was made in writing on the petition by

Lillian Andrews individually and as guardian of her three minor children (grandchildren of the deceased).

On July 25, 1966 the probate court granted the application and issued a license (Petitionee's Exhibit C) to the executrix making reference therein to the facts in the application as filed, stating that said mortgage would be beneficial to the heirs and all others interested in the estate. The license then provided: ". . . the said Court does hereby order and decree that the said real estate of said deceased, be sold and converted into money, and said executrix having been duly sworn to the faithful discharge of said trust in selling such estate." The license then authorized the executrix to mortgage the real estate, "either at public auction or private sale" and if by public auction certain requirements were specified to be met.

Thereafter, on August 21, 1966, the executrix executed a mortgage under the license to the plaintiff for $20,000.00. On December 12, 1966, the executrix executed a second mortgage to the plaintiff for $4500.00 and on June 27, 1967, she executed a third mortgage to the plaintiff for $5500.00.

Lillian S. Andrews is alleged to have died on April 30, 1969. As a consequence, the Probate Court on February 27, 1970, appointed Palmer D. Ainsworth of Springfield, Vermont, administrator d.b.n., c.t.a. of the Estate of Max Schoen and also guardian of the three grandchildren of said Max Schoen.

The petition to foreclose the three mortgages mentioned above was thereafter brought naming the Schoen Estate and the three grandchildren as defendants. The petition was met by an affidavit of defense and answers of the defendants which raised legal questions relating to the legality of the license to mortgage the real estate issued to Lillian S. Andrews, executrix, by the Probate Court for the District of Bradford and to the lack of authority of Lillian S. Andrews to mortgage the interest of the three grandchildren. The defendants' answer also averred that no license to mortgage was issued by any probate court having jurisdiction over the guardianship estates of the defendants.

The plaintiff then filed a motion for decree *pro confesso* notwithstanding the affidavit of defense. The parties filed an agreed statement of facts and the court, without hearing, made findings and, based thereon, issued its order that the

petition be taken as confessed and granted plaintiff's motion for decree.

It is from this action that the defendants have appealed with the permission of the court below as required by 12 V.S.A. § 4601.

On appeal the defendants specify the following grounds of error:

> "1. The Executrix' application for license to mortgage did not set forth a purpose which is provided by Title 14 V.S.A. Sec. 2201.
>
> 2. The Executrix' application for license to mortgage did not comply with Title 14, V.S.A. Sec. 2202.
>
> 3. The Executrix, as Guardian of the three minor grandchildren, was without authority to mortgage the interest of her wards, title in said premises having vested in her wards upon the death of the grandfather.
>
> 4. The Probate Court was without authority to issue a license to mortgage on the application of the Executrix setting forth that the same would be beneficial to the heirs and all those interested in said estate."

14 V.S.A. § 2201 provides that on petition and after notice to all persons interested, if on hearing it appears to be for the benefit of the estate, the probate court may authorize an executor, administrator, trustee or guardian to mortgage any of the real estate for the following purposes: to prevent a sacrifice of the estate; to make repairs and improvements upon the estate; to pay debts, legacies or charges of administration; to pay an existing mortgage lien or tax on the estate, or to support a ward.

And 14 V.S.A. § 2202 provides that the petition shall set forth a description of the property to be mortgaged, the amount of money necessary to be raised, the nature and amount of the obligation to be secured, and the purpose for which the money is required. It is further provided that the decree of the court upon such petition shall fix the amount for which the mortgage may be given, the terms thereof and the rate of interest which may be paid thereon.

We note also that 14 V.S.A. § 1612 confers the power upon the probate court to grant a license to sell lands, for certain

purposes, and on certain conditions, with the written consent and approval of the heirs, devisees and legatees, if it clearly appears that such sale of real estate would be beneficial to the persons interested and will not defeat any devise of lands. Although *Dwight* v. *Eastman,* 62 Vt. 398, 403, 20 A. 594 (1890), is not squarely in point, it supports the proposition that a conveyance of real estate by an executor, under license of a probate court, cannot defeat the interest of the unborn children as devisees, even though a guardian was appointed to confer such consent.

The parties, as well as the court below by its findings, agree that the legal title to the land in Thetford became vested immediately in the three minor grandchildren of Max Schoen upon his death, subject only to the life tenancy of Lillian Andrews and to the lien of the executrix to such an extent as might be required to pay the debts, expenses of administration and other expenses legally chargeable against the estate. This was our holding in the case of *In re Callahan's Est.,* 115 Vt. 128, 134, 52 A.2d 880 (1947), and *Spencer* v. *Lyman Falls Power Co.,* 109 Vt. 294, 299, 196 A. 276 (1938).

However, the personal estate of a deceased person shall be first chargeable with the payment of debts and expenses and it is only when such property is not sufficient for that purpose that the real estate may be sold. 14 V.S.A. § 1251; *Spencer* v. *Lyman Falls Power Co., supra.* And then, only so much real estate may be sold as might be required to pay the debts and expenses of administration which could not be discharged from the personal estate of the deceased. *Watkin's* v. *Merrihew's Est.,* 99 Vt. 294, 298, 131 A. 794 (1926).

So when such debts and expenses of the Schoen Estate had been paid, the lien of the executrix on the real estate was discharged, her authority over that property terminated and the grandchildren held such property acquit of her and of her lien. *Ibid.* And in *Slafter* v. *Savage,* 89 Vt. 352, 355, 95 A. 790 (1915), we held that "A guardian can only dispose of the real estate of his ward by proceeding in accordance with statutory provisions and ratification is regarded as an oblique method of disposal."

The court below by Finding No. 11 found—"That the license to mortgage alleges that the same would be beneficial to the

estate, although the Court is unable to find by any competent evidence as to the actual use of the money received by virtue of said mortgages." And the court stated in Finding No. 13 "That the Probate Court for the District of Bradford had full authority pursuant to the law to issue said license to mortgage, and it must be presumed without any competent evidence to the contrary that the proceeds were used in accordance with the statutes and authority granted to the executrix." The court by Finding No. 14 then says—"That as a result thereof, said estate was benefited as well as those interested in said estate."

Finding No. 15 reads:

"That although the Probate Court failed to use the specific language of Title 14 Section 2201 and 2202, V.S.A. nothing to the contrary having been shown by any competent evidence and further that all interested in said estate specifically, the minor grandchildren having consented to the granting of said license to mortgage by and through their then guardian, said license to mortgage shall be in full force and effect."

From what has been said it is at once quite apparent that there is a fundamental and gross inadequacy of facts in the agreed statement for this Court to resolve the issues presented. On the face of the record numerous problems arise which cannot be answered without the development of facts and findings not now found in the record, and the order of the trial court was error.

■ There is no question but that the statute grants the power to the probate court to issue a license to mortgage the real and personal property in an estate but in so acting the court cannot overreach the statute. The finding that the license was beneficial to the estate as well as those interested therein is not supported by any evidence. There is nothing in the record to show whether the probate court acted within the terms set forth in 14 V.S.A. §§ 2201 and 2202 which would give it jurisdiction to issue the license thereunder as it did.

■ Justice Blackmer stated in the case of *In re: Will of Prudenzano*, 116 Vt. 55, 60, 68 A.2d 704 (1949), 116 Vt. at 60, that:

"if it appears on the face of the proceedings that it (the probate court) has acted in a manner prohibited or not authorized by law, its orders and decrees are absolutely void and may be treated as a nullity. Nothing is presumed in favor of its jurisdiction, and such jurisdiction must be made affirmatively to appear by one who seeks to take advantage of its proceedings." (citations omitted).

The plaintiff in the present appeal seeks to take advantage of the license that was issued by the probate court. It would appear, therefore, that the burden was on the plaintiff to establish that the license was issued within the authorization of the statute and met the legal requirements of a valid license authorizing the execution of the three mortgages to the plaintiff bank.

■ Further, there is the problem of the interest of the grandchildren in the real estate and the protection of their rights. It is not apparent from the record whether Lillian Andrews was the legal guardian of the three minor children and, if she was, whether she proceeded in accordance with and met the statutory provisions. Also lacking are any facts surrounding the authority of Lillian Andrews to waive notice and give consent to the issuance of the license as guardian of the three minors. On the face of the record it was beyond her power to consent and approve the granting of the license to mortgage on behalf of her three minors as she did. The acceptance of the probate court of the application with such consent and approval as guardian is not to be taken in the nature of a decree or of a valid license in this respect. *Slafter* v. *Savage, supra,* 89 Vt. at 355.

■ ■ An order or license from the probate court to an administrator of a deceased person to sell his real estate is not sufficient to support a title derived from the administrator under such sale, unless it appears from the order or from the records of the probate court that such facts were found to exist as warranted the issuance of the order. *Clapp* v. *Beardsley,* 1 Aik. 168, 174 (1826). In that case the probate court issued an order "that a sale of the whole (real estate) would best serve the interest of all concerned." This court held that "This order, thus standing alone and unsupported by any

record from the probate court, is no order. It authorizes no sale, and does not support the deed . . . ."

The posture of the case at bar, as shown by the record, requires that there be a reversal and remand for a new trial on the issues presented for decision. The record must present a more solid basis of findings in order to resolve the important issues raised by the appeal. No conclusion in such a case can prudently be rested on an indefinite and inadequate factual foundation.

Since there must be a remand, another aspect of concern for the court below would be consideration of the appointment of a guardian *ad litem* for each defendant presently a minor. The reason for this is the possibility that the interests of the administrator d.b.n., c.t.a., he also being the legal guardian of the minors, might be in conflict with those of the estate. Further, it is to be noted that in *Pettengill* v. *Gilman,* 126 Vt. 387, 388, 232 A.2d 773 (1967), we said—"It has been generally held that the authority of counsel and guardian appointed to represent a minor in litigation does not include the power to submit his case on conceded facts." Whether this general rule applies is for the trial court.

*Reversed and remanded.*