## THE WEST JERSEY RAILROAD COMPANY

*v.*

## THE CAPE MAY AND SCHELLENGER'S LANDING RAILROAD COMPANY.

1. The legality of a corporation, which exists under the form of law, can. only be impugned by an application for a writ of *quo warranto*, or by an information in the nature thereof, instituted by the attorney-general.

2. The fact that the right of the complainant depends on an unsettled question of law, is always fatal to an application for a preliminary injunction.

3. It is a maxim of the law of injunctions that a preliminary writ shall not be awarded, except in case of urgent necessity, and when irreparable injury is threatened.

4. Where the averments of the bill are met by a full, explicit and circumstantial denial in the answer, the general rule directs that a preliminary injunction shall be denied. ·

5. The construction of a horse railroad in a public street, is a legitimate use of the street, and not a taking of private property for public use, within the meaning of the constitution.

———

On an application for an injunction, heard on bill and affidavits and answer and affidavits.

*Mr. Peter L. Voorhees*, for motion.

*Mr. Samuel H. Grey, contra.*

VAN FLEET, V. C.

The defendants are constructing a horse railroad in the city of Cape May, with the consent of its common council. They claim to have acquired corporate existence and powers in virtue of the provisions of the general railroad law. The complainants seek by injunction to prevent the defendants from proceeding further in the construction of their road. They ask the interposition of the court on three grounds.

West Jersey R. R. Co. *v.* Cape May and Schellenger's Landing R. R. Co.

*First.* They insist that the general railroad law does not authorize the formation of a corporation to construct a railroad to carry passengers by horse power. It is not disputed that the defendants have formed themselves into a corporation in strict conformity to the provisions of the law just mentioned, and that they have, for some time past, been exercising corporate franchises. They are undoubtedly a corporation *de facto*. When that is the fact, this court cannot, at the instance of private persons, restrain such corporation from exercising the powers usually exercised by similar corporations, on the ground that its organization is not *de jure*. The legality of a corporation which exists under the forms of law, can only be impugned by an application for a writ of *quo warranto*, or by an information in the nature thereof, instituted by the attorney-general. *National Docks Railway* v. *Central Railroad of New Jersey, 5 Stew. Eq. 755.*

In addition, it is proper to remark that the question whether or not such a corporation may be legally formed under the general railroad law, is, as yet, an unsettled legal problem. That being so, it is obvious the complainants' right to the remedy they seek is not clear, and that fact is always fatal to an application for a preliminary injunction. *Hackensack Im. Com.* v. *N. J. Midland Railway Co., 7 C. E. Gr. 94; Citizens Coach Co.* v. *Camden Horse R. R. Co., 2 Stew. Eq. 299; Long Branch Com'rs* v. *West End R. R. Co., 2 Stew. Eq. 566.*

*Secondly.* It is said, even if it be conceded that a horse railroad may be lawfully constructed by a corporation formed under the general railroad law, still such corporation cannot build their road in the manner in which the defendants have built theirs. The road in question has been laid, its whole length, longitudinally over the streets of Cape May city. This method of location, it is contended, is prohibited by the fourteenth section of the law under consideration. No such prohibition is apparent to my mind. The relevant clauses of the section may be rendered as follows: That in case any railroad constructed under this act shall *cross* any street or highway in any city, it shall build its road either above or below the grade thereof, at such

distance as shall not interfere with the free and uninterrupted use of the street or highway, provided the common council may grant permission to cross at grade, if they deem it best for the interest of the city. I am unable to discover anything in these provisions which, even by a strained implication, interdicts the construction of a horse railroad lengthwise over a street. As I understand them, they simply prescribe how a steam railroad shall *cross* a public street in a city.

But if we were to concede that the complainants are right on both points, still, I think, it would be manifest that no injunction could issue. A party is not entitled to an injunction simply because he shows that a law has been violated, or that his legal rights have been invaded. It is a maxim of the law of injunctions that a preliminary writ shall not be awarded, except in case of urgent necessity, and when irreparable injury is threatened. *Hinchman* v. *Paterson Horse R. R. Co., 2 C. E. Gr. 76*, decides that the construction of a horse railroad in a public street is a legitimate use of the street, and not a taking of private property for public use within the meaning of the constitution. This, I believe, is now regarded as the established doctrine upon this subject in this state. At most, then, the grievance of which the complainants complain can only be esteemed a bare violation of law, which has not and cannot result in legal injury to them. Such a wrong cannot be made the basis of the exercise of the prohibitory power of this court.

The complainants' third ground, if true, unquestionably presents a sufficient reason for the interference of this court. They say the defendants, without right or authority, are constructing a railroad on their lands, which are private property, and to which the public have no right whatever. If this is true, the defendants have violated the security which the constitution throws around private property, and it is, therefore, the duty of the court to exert its power.

But the defendants meet this averment by a full, explicit and circumstantial denial. They say their railroad is located and constructed wholly within the lines of the public streets of Cape May city, and not outside of them, upon the private property

of the complainants. It would be difficult, I think, to select language by which a more precise and comprehensive denial could be made. The answer of the defendants sweeps away every particle of equity upon which the complainants' title to relief rests. When that is the case, the general rule directs that a preliminary injunction shall be denied.

There are exceptions to this rule, but none of them cover this case.

In the present posture of the litigation, it is clear, upon well-established principles, that the complainants are not entitled to an injunction. The order to show cause must, therefore, be discharged, and the injunction asked must be denied.