*6 Buch.*                    Streeter *v.* Braman.

THOMAS W. STREETER, trustee in bankruptcy of Hammond Braman,

*v.*

GRENVILLE D. BRAMAN, individually and as executor of Susie A. Braman, deceased.

[Decided October 30th, 1909.]

1. An affidavit attached to the bill cannot be considered as a part thereof.

2. Testatrix gave her entire estate to her two sons and made them executors. The will was proved January 3d, 1907, and the executor who qualified filed in the orphans court on April 26th, 1909, an inventory showing about $1,500 cash on hand, and at the same time filed his final account. The son who did not qualify as executor was adjudged bankrupt on December 1st, 1908, and complainant was appointed trustee in bankruptcy several months thereafter and brought a suit against the executor to transfer to the chancery court the settlement of the executor's account pending in the orphans court. The bill alleged that testatrix received large amounts during her lifetime and turned over to defendant money and securities amounting to $23,000, which property was owned by her at her death, together with other property ; that defendant's relation to testatrix precluded a gift thereof to him, and complainant believed that testatrix did not dispose of such property, and it should have been in defendant's possession and accounted for as assets of the estate ; that it was impossible to secure a complete accounting in the orphans court, it being without adequate jurisdiction to compel discovery of the assets of which testatrix should have died seized. Fraud by the executor, or his pecuniary irresponsibility for any failure to account, was not alleged.— *Held*, that where the chancery court and the probate court have concurrent jurisdiction, it is a matter of discretion whether the former will intervene, either before or after the probate jurisdiction has attached, and. in view of the enlarged powers of the orphans court in such cases, the complainant showed no reason why the chancery court should assume jurisdiction.

3. A bill cannot be sustained as a bill for discovery where it did not allege that a discovery was sought in aid of a proceeding in another court, but merely sought to enjoin a pending proceeding in another court so as to transfer the case to the chancery court.

4. A bill cannot be sustained as a bill for discovery where it prays for an answer without oath.

On demurrer.

*Mr. Isaac W. Carmichael* and *Mr. William M. Stockbridge* (of Massachusetts), for the demurrant.

*Mr. John M. Dickinson,* for the complainant.

STEVENSON, V. C.

My conclusion is that the demurrer should be sustained.

1. The object of the bill is to transfer to this court the settlement of an executor's account now pending in the orphans court of Ocean county. The main facts are as follows:

The testatrix, Susie A. Braman, died March 8th, 1907, leaving her estate to her two sons whom she appointed executors. One of the sons only, the defendant above named, qualified as executor. The other son is the bankrupt whose interest in the estate is now vested in the complainant. The will was proved in Ocean county on June 3d, 1907. On or about December 1st, 1908, Hammond Braman was adjudged a bankrupt by the United States district court in Massachusetts, and subsequently, whether one month or three months after the adjudication does not appear, the complainant was appointed trustee of the bankrupt's estate. On or about April 26th, 1909, the defendant filed an inventory showing a single item, viz., cash amounting to $1,549.66, and at the same time filed a final account charging himself with the inventory and praying "allowance for various expenditures," none of which are questioned in any way. In view of the allegation that the defendant "although often requested" to file an inventory failed, and refused to do so until he filed his account, and until the complainant had instituted proceedings to compel him to file such inventory, it is important to note that the delay in filing the inventory where the two brothers alone appear to have been interested from June 3d, 1907, until after December 1st, 1908, is not significant of any substantial violation of duty on the part of the defendant, and that the inventory and final account were actually filed within four months after the adjudication of bankruptcy and within a less

time, perhaps only a few weeks, after the complainant had been appointed trustee and acquired an interest which entitled him to call upon the defendant to account.

An affidavit attached to the bill alleges that the complainant has filed exceptions to the account of the defendant in the surrogate's office of Ocean county. This affidavit, of course, cannot be considered as part of the bill, but counsel for the complainant in his brief treats the filing of exceptions as a fact presented to this court by the demurrer, and makes an argument in regard to that fact. It would seem that as against the complainant the bill might well be deemed amended so as to include the allegation that exceptions are pending in the Ocean county orphans court. But however this may be no ·obstacle in the way of the filing and having a complete trial of exceptions in the orphans court is suggested by the bill.

The bill sets forth that the testatrix received large amounts of money and securities during her lifetime, and that in 1903 she "turned over" moneys or securities amounting to $23,000 to the defendant to hold for her; that this property was owned by the testatrix at her death and formed part of her estate; that the testatrix also owned certain valuable jewelry and other chattels which "formed a part of her estate;" that the testatrix for three years next preceding her death lived with the defendant and during that time he had sole .custody of her estate; that so far as the complainant is informed she made no disposition of any of her estate except the distribution of a certain sum specified; that the securities, &c., placed in the hands of the defendant, together with the jewels and other chattels above referred to "*should have been* in the possession of said defendant and accounted for by him as assets of her estate." The bill also alleged that the relations between the testatrix and the defendant "were such as to preclude the idea of any gift of any property whatever" from her to him, and that, as the complainant is informed, she made no other gift or distribution of the estate which she placed in the care and custody of the defendant.

Upon these facts the bill alleges that the complainant is advised and he avers that it is

"wholly impracticable and impossible to proceed in the orphans court of Ocean county to secure a complete accounting of the assets of testatrix's estate which court is without full, complete and adequate jurisdiction in the premises to compel the discovery by said executor of the assets of which his testatrix died seized or *should have died seized*, together with an account of the kind, character and amount thereof,"

and that the court of chancery alone has power to grant relief. The sole charge against the executor in the bill is that he has failed to inventory and account for a substantial portion of the estate of the testatrix. He is not charged with any fraud whatever unless the mere failure to account for assets before any opportunity has been afforded for an explanation is to be regarded as an indirect charge or suggestion of embezzlement. There is no specification of any objections to the account including the account of disbursements which the defendant has filed excepting his failure to account for these assets which apparently at some time disappeared. There is no direct charge that the defendant had any portion of the estate of the testatrix in his possession at the time of her death for which he has failed to render an account. The exact charge is that certain assets "should have been in the possession" of the defendant and should have been accounted for by him. There is no charge that the defendant is not absolutely responsible pecuniarily for any demand that may be made upon him growing out of his failure to discharge his duty as executor and account for all the property of the deceased which came to his hands or which "should have" come to his hands.

2. The law applicable to this case may be found in a few recent decisions of this court and the court of errors and appeals. *Filley* v. *Van Dyke,* 74 N. J. Eq. (5 Buch.) 571; *Wyckoff* v. *O'Neil,* 71 N. J. Eq. (1 Buch.) 681; *Woolsey* v. *Woolsey,* 72 N. J. Eq. (2 Buch.) 898; *Pyatt* v. *Pyatt,* 46 N. J. Eq. (1 Dick.) 285.

The test of the propriety of this demurrer is presented by the question whether any "special reason" appears upon the face of this bill why the court of chancery should interfere with the orderly administration of this estate by the orphans court of Ocean county and take upon itself the burden of such administration. I am quite unable to discover any *special* reason, or,

indeed, any reason whatever, for such interference. If this cause should be removed to this court because it is "wholly impracticable and impossible" for the orphans court of Ocean county to accomplish justice, it would seem that in all or almost all cases where an executor is charged with merely failing to account for an asset which "should have been in his possession" any party interested has the option to remove the administration of the estate into the court of chancery. If the complainant is justified in objecting to the forum in which this cause now lies, it would also seem that the efforts of the legislature for many years to expand the powers of the orphans court by giving those courts equitable jurisdiction for the recovery of legacies and distributive shares, power to compel executors and administrators to make discovery under oath, and produce books and papers, to try exceptions to accounts, to compel the giving of additional security, to remove executors and administrators for waste, neglect or abuse of trust of any kind, have still left the orphans courts in an extremely feeble condition so that parties interested in estates still find it "impracticable and impossible" to get adequate relief in them in very simple cases.

It must always be borne in mind that in cases like this, where the court of chancery has concurrent jurisdiction with a law or probate court, and it is a matter of discretion whether the court of chancery will intervene, either before or after the law or probate court has taken jurisdiction, to use the language of Vice-Chancellor Reed in *Bellingham* v. *Palmer, 54 N. J. Eq. (9 Dick.) 136, 139,* it is, "the present and not the past method of legal procedure which should be regarded." This principle is applied to bills for an accounting (*Bellingham* v. *Palmer, supra; Daab* v. *New York Central Railroad Co., 70 N. J. Eq. (4 Robb.) 489, 493,* bills for a new trial; *Hannon* v. *Maxwell, 31 N. J. Eq. (4 Stew.) 318, 329; Walcott* v. *Jackson, 52 N. J. Eq. (7 Dick.) 387, 390; Hayes* v. *United States Phonograph Co., 65 N. J. Eq. (20 Dick.) 5, 8),* and must be generally applicable to all cases where the jurisdiction of a court of equity or a special reason for the exercise of such jurisdiction is based upon the claim that the remedy in the law or probate court is inadequate.

Many of the older decisions of this court where jurisdiction has been taken of proceedings in the orphans court must be read and applied with the full recognition of the fact that at the time those decisions were rendered the remedial agencies and powers of the orphans court were to a large extent undeveloped. The legislature by steadily increasing the powers of the orphans court has necessarily decreased the number of instances in which the jurisdiction of this court now under consideration can wisely and discreetly be exercised.

It is urged on behalf of the complainant that the decision of the court of errors and appeals in *Filley* v. *Van Dyke, supra,* sustains or tends to sustain the complainant's bill. The "special reasons" in that case found sufficient by the court of last resort for the interposition of the court of chancery are conspicuously wanting in the present case. The reasons specified (*p. 944*) are "long delays unexplained, the inaction of the parties, the retention of assets by Frederick (a former removed executor charged with the possession of assets and financially irresponsible) and *above* all the action of the judge" of the orphans court who was a party defendant in the chancery suit "in passing an important item of account in which he was personally interested." The delays referred to included the failure to file an account "though seven years had elapsed." In the present case, as we have seen, there is no delay which is significant of fraud or substantial violation of duty causing injury to anyone. But in this *Van Dyke Case* the court of errors and appeals find as prominent "above all" other reasons for equitable intervention that the particular judge of the orphans court having jurisdiction of the estate in question was disqualified by interest from attending to the particular case. I do not think that the decision of the court of errors and appeals in *Filley* v. *Van Dyke,* or the opinion delivered by Mr. Justice Parker on behalf of the court in that case, suggests any adequate "special reason" why the court of chancery in this case should oust the orphans court of Ocean county of its jurisdiction and assume the administration of Mrs. Braman's estate.

3. It is conceded by counsel for the complainant that the bill cannot be sustained in this case as a bill for discovery alone. The

bill does not allege that discovery is sought in aid of a proceeding in any other court, but, on the contrary, seeks to enjoin a pending proceeding so as to give the court of chancery sole power to grant relief for the grievance set forth in the bill. *Story Eq. Pl.* §§ *326, 560; United N. J. R. Co.* v. *Hoppock, 28 N. J. Eq. (1 Stew.) 261.* It is also, in my judgment, a sufficient answer to any suggestion that the bill can be treated as a bill for discovery only that it prays for an answer without oath. In the case of *Manley* v. *Mickel, 55 N. J. Eq. 563,* Mr. Justice Collins, speaking for the court of errors and appeals, leaves this point undecided, but stigmatizes the filing of such a bill for discovery as "a fruitless experiment." *Lex nil frustra.* See *Daab* v. *New York Central Railroad Co., 70 N. J. Eq. (4 Robb.) 489.*